**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | | |
|---|---|---|
| MISTIE LYNN BAUM, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No.: 1:14-cv-162 (WLS) |
| | : | |
| ROBERT HERMAN REVELL, JR. | : | |
| and KEVIN SPROUL, individually and | : | |
| in their official capacities, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER

Before the Court are Defendant Robert Herman Revell, Jr.'s unopposed Motion for Summary Judgment (Doc. 19), Defendant Kevin Sproul's Motion for Summary Judgment (Doc. 24), and Plaintiff Mistie Lynn Baum's Motion for Partial Summary Judgment as to her claims against Defendant Sproul (Doc. 28).  The Court finds that all three Motions are now ripe for review.

## PROCEDURAL HISTORY

This action was removed from the Superior Court of Dougherty County on October 25, 2014. On November 20, 2014, the Court denied Plaintiff Mistie Lynn Baum's Motion for Class Certification. (Doc. 10.) On December 22, 2014, Baum filed an Amended Complaint with leave from the Court. (Doc. 14.) On March 6, 2015, Defendant Revell filed a Motion for Summary Judgment. (Doc. 19.) Baum filed no response even though she requested and was granted an extension of time to do so. (Docs. 20, 21, 23.) She did, however, file a Motion to Dismiss her claims against Defendant Revell, which the Court construed as a motion for leave to amend and denied.  (Docs. 25, 30.)

On April 3, 2015, Defendant Sproul filed a Motion for Summary Judgment. (Doc. 24.) On April 24, 2015, Baum filed a timely response to that Motion together with her own Motion for Partial Summary Judgment as to all claims against Defendant Sproul. (Docs. 27,

28.) After receiving an extension of time to reply to Baum's response and respond to Baum's Motion for Partial Summary Judgment, Sproul filed a timely reply and response on May 31, 2015. (Doc. 32.) On June 22, 2015, Baum filed a single brief characterized as both a reply to Sproul's response regarding her Motion and a sur-reply regarding Sproul's Motion for Summary Judgment. (Doc. 33.) The Court **STRIKES** this brief (Doc. 33) from the record and will not consider it in ruling on the pending Motions because it was both an untimely reply, filed more than fourteen days after Sproul's May 31, 2015 response, and a sur-reply filed without leave from the Court. M.D. Ga. L. R. 7.3, 7.3.1.

## FACTUAL HISTORY

The following facts are derived from Defendant Revell's Statement of Material Facts (Doc. 19-1), Defendant Sproul's Statement of Material Facts and Plaintiff Baum's Response (Docs. 24-1, 27-2), Baum's Statement of Material Facts and Sproul's Response (Docs. 28-2, 32-1), and the record in this case. Where relevant, the factual summary also contains undisputed  facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits submitted, all of which are construed in a light most favorable to the nonmoving party. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). For the reasons that follow, the Court finds that this case does not contain a genuine dispute of material fact.

On September 13, 2014, Dougherty County, Georgia sheriff's deputies arrested Plaintiff Mistie Lynn Baum for theft by receiving stolen property, to-wit, a 2003 Mazda Tribute. (Doc. 24-7 at 8.) Upon her arrest, officials placed Baum in the Dougherty County Jail, over which Defendant Keven Sproul exercises control as the Sheriff of Dougherty County. At the time of Baum's arrest in Dougherty County, there was an outstanding warrant for her arrest issued by Sedgwick County, Kansas on August 18, 2014. On September 14, 2014, Baum attended an initial appearance hearing on the Dougherty County charge in front of Judge Victoria Darrisaw. On September 15, 2014, Dougherty County Chief Magistrate Judge Baxter Howell signed a felony theft warrant for Baum's arrest. On September 25, 2014, Baum appeared before Defendant Magistrate Judge Robert Herman Revell for a hearing where she was informed that her Georgia charge had been upgraded

from a misdemeanor to a felony. This was the only time Baum appeared before Judge Revell in connection with the circumstances alleged in her amended complaint.

At a November 12, 2014 committal hearing, Magistrate Judge Beau Beauchamp dismissed the Dougherty County charge against Baum because the arresting officer failed to appear for the hearing. Baum remained in custody. (Doc. 14-2.) On November 17 and 18, 2014, Baum appeared for an extradition hearing before Magistrate Judge Beau Beauchamp at which Judge Beauchamp informed her of the Kansas warrant for her arrest and the charges against her, her right to petition the Governor of Georgia to intercede on her behalf and deny the request for temporary custody, her right to be taken before a court and arraigned, her right to appointment of counsel, and her right to file a habeas petition challenging her detention. (Doc. 24-7 at 98-99.) Baum requested to be released from the Dougherty County Jail, arguing that her custody was unlawful because Georgia's extradition statutes had not been followed.  Judge Beauchamp denied Baum's request (*Id.* at 112), and Baum remained in custody. On December 17, 2014, the Governor of Kansas issued a request for Baum's extradition. (Docs. 24-1 at 3; 24-4; 27-2 at 1.) The same day, Baum was indicted by a Dougherty County grand jury on one count of Theft by Receiving Stolen Property (Doc. 24-7 at 65-66.) Also that same day, Baum filed a petition for habeas corpus in state court, which was denied on January 16, 2015.

On December 29, 2014, Superior Court Judge Willie Lockette issued a special presentment bench warrant for Baum's arrest on one count of felony theft by receiving stolen property. (Doc. 24-7 at 81-82.) On December 30, 2014, Georgia Governor Nathan Deal signed a warrant for Baum's extradition to Kansas. (Doc. 24-5.) On January 8, 2015, Baum filed a second habeas petition. The Dougherty County felony theft charge was *nol prossed* on January 9, 2015 (Doc. 24-7 at 133-34), and the same day Baum was released from custody on bond and under electronic restriction. On January 29, 2015, Baum voluntarily dismissed her second habeas petition, and on February 12, 2015, she was extradited to Kansas.

## STANDARDS OF REVIEW

### I.   Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment where no genuine issue of material fact remains and the party is entitled to judgment as a matter of law. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by demonstrating to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or 'show that there is some metaphysical doubt as to the material facts.'" *Matsuhita*, 475 U.S. at 586 (citations omitted). Instead, the non-movant must point to record evidence that would be admissible at trial. *See Jones v. UPS*

4

*Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form").  Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant.  *See* Fed. R. Civ. P. 56(c)(4).

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict.  *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646.  However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

## II.   Local Rule 56

Local Rule 56 requires the following:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried.  Response shall be made to each of the movant's numbered material facts.  All material facts contained in the moving party's statement which are not specifically controverted by the respondent in respondent's statement shall be deemed to have been admitted, unless otherwise inappropriate.

M.D. Ga. L.R. 56. Here, Defendant Revell properly filed a summary judgment motion with a statement of undisputed facts, as required by the Federal Rules of Civil Procedure and the Local Rules of this Court, and Plaintiff Baum filed no response. (Doc. 19-1; *see* Docket.) Defendant Sproul properly filed a summary judgment motion with a statement of undisputed facts, and Plaintiff Baum filed a one-page response to the statement of facts that did not respond to each of Sproul's numbered material facts but simply stated, "There are no material facts to which there exists a genuine issue as to the issue of liability of the Defendant SHERIFF SPROUL to Plaintiff for false imprisonment."  (Docs. 24-1; 27-2 at 1.) Baum properly filed a partial summary judgment motion with a statement of undisputed facts, and Sproul filed a response.  (Docs. 28-2; 32-1.)

<u>**ANALYSIS**</u>

At the outset of its consideration of Baum's claims, the Court notes that even though Baum failed to respond to Defendant Revell's Motion for Summary Judgment, the Court cannot grant a motion for summary judgment based on default or as a sanction for failure to properly respond. *Trustees of Cent. Pension Fund of Int'l Union of Operating Eng'rs and Participating Emp'rs v. Wolf Crane Serv., Inc.*, 374 F.3d 1035, 1039 (11th Cir. 2004). The Court must conduct an independent review of the record before ruling on Revell's Motion for Summary Judgment and herein does so. However, the Court is not required to sift through the record in order to formulate a response for a party, particularly when that party is represented by counsel; rather, the Court is required to review the motion for summary judgment and supporting evidence "to determine whether they establish the absence of a genuine issue of material fact." *Jaroma v. Massey*, 873 F.2d 17, 20 (1st Cir. 1989) (per curiam); *see also United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1102 (11th Cir. 2004).

## I.     BAUM'S 42 U.S.C. § 1983 CLAIMS AGAINST SPROUL IN HIS OFFICIAL CAPACITY

The Court finds that Defendant Sproul is entitled to summary judgment as to Baum's 42 U.S.C. § 1983 damages claims against him in his official capacity because Eleventh Amendment sovereign immunity forecloses such claims against state or county officials in their official capacities. In Georgia, suing a county official in his official capacity for damages is the legal equivalent of suing the state for damages, which is unlawful under the Eleventh Amendment. *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690, n. 55 (1978) (noting that official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent"); *see also Manders v. Lee*, 338 F.3d 1304, 1319-29 (11th Cir. 2003).

In *Manders*, the Eleventh Circuit set forth four factors a court should weigh in determining whether an official is an "arm of the State": "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." 338 F.3d at

1309.  Whether a defendant was acting as an "arm of the State" must be "assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." *Id.* at 1308.

Here, the relevant function Defendant Sproul performed in relation to Baum's custody was enforcing state law and promulgating policies at the Dougherty County Jail. The Eleventh Circuit has repeatedly held "that a Georgia sheriff acts as an arm of the State when promulgating policies at county jails." *E.g.*, *Scruggs v. Lee*, 256 F. App'x 231-32 (11th Cir. 2007); *Purcell ex rel. Estate of Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313, 1325 (11th Cir. 2005); *Manders*, 338 F.3d at 1315. Furthermore, in *Manders*, the Eleventh Circuit held that a sheriff's "authority and duty to administer the jail in his jurisdiction flows from the State, not [the] County." 338 F.3d at 1315. The Court concludes that Sproul's function as administrator of the Dougherty County jail, which included maintaining custody of Baum pursuant to an arrest, was a function he performed as an "arm of the State." *See Mladek v. Day*, 293 F.Supp.2d 1297, 1304 (M.D. Ga. 2003) (finding that a Georgia sheriff acted as an arm of the state in his role as supervisor of a sheriff's deputy who effectuated the arrest and detention of the plaintiff and that the deputy himself acted as an arm of the state in effectuating the arrest and detention). Therefore, the Court **GRANTS** Defendant Sproul's Motion for Summary Judgment (Doc. 24) and **DENIES** Plaintiff Baum's Motion for Partial Summary Judgment (Doc. 28) as to Baum's federal claims against him in his official capacity because those claims are barred by the Eleventh Amendment.

## II.   BAUM'S 42 U.S.C. § 1983 FOURTH AMENDMENT CLAIM AGAINST SPROUL IN HIS INDIVIDUAL CAPACITY

While Baum argues that Sproul and others violated Georgia's version of the Uniform Criminal Extradition Act, O.C.G.A. § 17-13-20 *et seq.*, in order for Baum to prevail on a 42 U.S.C. § 1983 claim against Sproul for violating her Fourth Amendment rights, Baum must ultimately prove that Sproul's actions amounted to a Fourth Amendment violation, regardless of whether they violated Georgia's extradition statutes. *Harden v. Pataki*, 320 F.3d 1289, 1293, 1301 (11th Cir. 2003) ("As we have not held so before, today, we join our five sister circuits that have held that a violation of state extradition law can serve as the basis of

a section 1983 action '[w]here the violation of state law causes the deprivation of rights protected by the Constitution and statutes of the United States.'"(internal citations and quotations omitted)). The Fourth Amendment requires, generally, that a probable cause determination be made by a neutral and detached magistrate either before or promptly after arrest. *Gerstein v. Pugh*, 420 U.S. 103, 125 (1975); *Johnson v. United States*, 333 U.S. 10, 14 (1948).

Here, the undisputed facts show that such a determination was made by a neutral and detached magistrate in the State of Kansas. (Docs. 14-1 at 3-5; 24-1 at ¶ 3; 27-2; 28-2 at ¶ 3.) Baum has made no allegations that the Kansas magistrate was not neutral and detached. Therefore, the remaining legal question as to Baum's Fourth Amendment claim against Sproul is whether the probable cause determination made by the Kansas magistrate provided an adequate constitutional basis for the arrest and continued detention of Baum in Georgia pending extradition. The Court concludes that it did.

A probable cause determination "must be made by a judicial officer either before or promptly after arrest." *Gerstein v. Pugh*, 420 U.S. 103, 125 (1975). "Extradition inevitably involves a significant period of restraint of liberty by the asylum state, and where that process is sought before trial, a determination that there is probable cause to arrest must be made before extradition is completed." *Batton v. Griffin*, 241 S.E.2d 201, 202 (1978). The Georgia Supreme Court has held that Georgia's extradition statute's authorization of a warrantless arrest on the basis that an accused is charged in another state with a crime punishable by death or more than one year imprisonment comports with the Fourth, Fifth, and Sixth Amendments. *Ledesma v. State*, 306 S.E.2d 629, 631 (Ga. 1983). Specifically, the Georgia Supreme Court held that the extradition statute comports with the probable cause requirement articulated in *Beck v. Ohio*, 379 U.S. 89, 96-97 (1964). *Id.* And in *Batton*, the Georgia Supreme Court held that the determination of probable cause to arrest (and thus to detain) an individual may be made by the state demanding extradition. 241 S.E.2d 201, 202-03 (Ga. 1978). The court held:

> Thus if a copy of either an indictment or an arrest warrant accompanies the requisition, no further determination of the existence of probable cause to arrest will be made by this state, for in the interest of comity and the

> expeditious administration of justice we will rely on the official representation
> that probable cause to arrest has been constitutionally found by the
> demanding state.

*Id.* (internal citations omitted).

Although *Batton* involved an individual who was in custody in Georgia on Georgia state law charges and whose extradition was sought by another state, the Court finds that the holding and the interests of comity and expeditiousness likewise apply to situations like Baum's where there may no longer be pending Georgia state law charges to justify continued detention, but the state seeking extradition has made a probable cause finding as to other charges. *See United States v. D'Angelo*, 819 F.2d 1062, 1064 (11th Cir. 1987) ("[T]he Screven County[, Georgia] sheriff's deputies had a South Carolina warrant with them when they arrested [the defendant]. If the warrant was valid and validly executed, then the arrest based on the warrant is lawful. Even if the warrant is invalid or not properly executed, [the defendant's] arrest may still be upheld as a warrantless arrest under Georgia law."). The First Circuit considered a circumstance similar to Baum's in *Ierardi v. Gunter*, 528 F.2d 929 (1st Cir. 1976). In *Ierardi*, a case involving the Uniform Criminal Extradition Act, the First Circuit held:

> If, for example, the papers submitted by Florida were to show that a judicial
> officer or tribunal there had found probable cause, Massachusetts would not
> need to find probable cause anew, nor would it need to review the adequacy
> of the Florida determination. Instead, it would be entitled to rely on the
> official representations of its sister state that the requisite determination had
> been made; thus in our view Massachusetts may credit an arrest warrant
> shown to have issued upon a finding of probable cause in Florida just as it
> would credit a Florida indictment.

528 F.2d at 931.

Here, it is undisputed that a warrant for Baum's arrest had been issued in the State of Kansas. The Court finds that the State of Kansas's determination that there was probable cause to arrest and detain Baum provided an adequate basis for her arrest and detention in Georgia. The Court finds that any violations of the Uniform Criminal Extradition Act, as adopted by Georgia, did not give rise to a violation of Baum's Fourth Amendment rights

based on the undisputed facts in the record. For those reasons, the Court **GRANTS** Sproul's Motion for Summary Judgment (Doc. 24) and **DENIES** Baum's Motion for Summary Judgment (Doc. 28) as to Baum's 28 U.S.C. § 1983 Fourth Amendment claim against Sproul in his individual capacity.

## III.   BAUM'S 42 U.S.C. § 1983 FOURTEENTH AMENDMENT DUE PROCESS CLAIM AGAINST SPROUL IN HIS INDIVIDUAL CAPACITY

Baum also alleges that Sproul violated her Fourteenth Amendment due process rights by detaining her in violation of Georgia's extradition statutes. (Doc. 14 at 11, Doc. 28-3 at 11.) "Liberty interests protected by the Fourteenth Amendment may arise from two sources –the Due Process Clause itself and the laws of the States." *Hewitt v. Helms*, 459 U.S. 460, 466 (1983), *overruled on other grounds by Sanding v. Conner*, 515 U.S. 472 (1995). Baum may attempt to show that Sproul's actions violated her due process rights by violating the United States Constitution and/or by violating a Georgia statute that creates a liberty interest protected by the Due Process Clause. *Cf. Bunyon v. Burke Cnty.*, 285 F.Supp.2d 1310, 1320-21 (S.D. Ga. 2003). The Court finds that because Baum's response to Sproul's Motion for Summary Judgment and brief in support of her own Motion for Partial Summary Judgment focuses exclusively on Sproul's alleged violations of Georgia's extradition statutes, Baum's Due Process claim rests on the theory that Sproul violated Georgia extradition statutes that create liberty interests protected by the Due Process Clause. (Doc. 28-3 at 7-9. 11-13.)

### A.  Whether O.C.G.A. §§ 17-13-34 and 17-13-35 Create Liberty Interests

The Court must first determine whether O.C.G.A. §§ 17-13-34 and 17-13-35 create a liberty interest, or interests, protected by the Due Process Clause. *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."). A "[s]tate creates a protected liberty interest by placing substantive limitations on official discretion."  *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983). "If the decisionmaker is not 'required to base [his] decisions on objective and defined criteria,' but instead 'can deny the requested relief for any constitutionally permissible reason or for no reason at all,' the State

has not created a constitutionally protected liberty interest." *Id.* (quoting *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 466-67 (1981) (Brennan, J. concurring)).

In *Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 571 (1972), the Supreme Court held, "[T]o determine whether due process requirements apply in the first place, we must look not to the 'weight' but to the nature of the interest at stake." However, in a line of cases following *Roth*, the Supreme Court began holding that courts must determine whether a state has created a liberty interest not by considering the "nature" of the interest but whether the statute at issue includes "mandatory directives." Notably, every case in this line involved the question of whether a particular prison regulation created a liberty interest for prisoners. *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454 (1989; *Olim v. Wakinekona*, 461 U.S. 238 (1983); *Hewitt v. Helms*, 459 U.S. 460 (1983); *Greenholtz v. Inmates of Neb. Penal and Corr'l Complex*, 442 U.S. 1 (1979); *Montanye v. Haymes*, 427 U.S. 236 (1976). In *Sandin v. Connor*, the Supreme Court considered this line of cases, herein referred to as the *Hewitt* line, and backtracked, holding, "Such a conclusion may be entirely sensible in the ordinary task of construing a statute defining rights and remedies available to the general public. It is a good deal less sensible in the case of a prison regulation primarily designed to guide corrections officers in the administration of a prison." 515 U.S. 472, 481 (1995). The Court went on to reject the *Hewitt* line of cases and "return to the due process principles" applied in the earlier cases of *Roth*, *Wolff v. McDonnell*, 418 U.S. 539 (1974), and *Meachum v. Faro*, 427 U.S. 215 (1976), at least with regard to cases involving prison regulations. *Id.*

The Court notes this evolution of the relevant due process precedent because district and circuit court opinions that are more akin to the case presently before the Court, some of which were issued post-*Sandin*, cite to the *Hewitt* line of cases in determining whether state statutes create liberty interests. *See, e.g.*, *Behrens v. Regier*, 422 F.3d 1255, 1262 (11th Cir. 2005) (considering whether a Florida statute gives foster parents a liberty interest in the continued custody of their foster children); *Oviatt by and through Waugh v. Pearce*, 954 F.2d 1470, 1474-75 (9th Cir. 1992) (considering whether Oregon statutes give pretrial detainees liberty interests in being afforded an arraignment within thirty-six hours of arrest and in being either tried or released from custody no more than sixty days after arrest); *Bunyon v. Burke Cnty.*, 285

F.Supp.2d 1310, 1321 (S.D. Ga. 2003) (considering whether Georgia statutes gives pretrial detainees liberty interests in being afforded an arraignment within seventy-two hours of arrest and in being allowed to post bail on a misdemeanor charge). These holdings are based primarily on the *language* of the state statutes at issue, like the *Hewitt* line of cases, rather than on the *nature* of the interests created. The Court will herein apply the same reasoning, finding that Eleventh Circuit and other courts' precedent so require. *Behrens*, 422 F.3d at 1262; *Oviatt*, 954 F.2d at 1474-75; *Bunyon*, 285 F.Supp.2d at 1321.

The Court next determines whether O.C.G.A. §§ 17-13-34 and 17-13-35 create a liberty interest, or interests, protected by the Due Process Clause. O.C.G.A. § 17-13-34 states that when a fugitive is arrested without a warrant, he "*must* be taken before a judge or magistrate with all practicable speed . . . " (emphasis added). Section 17-13-34 contains mandatory language that places "substantive limitations on official discretion" as to whether and how quickly a fugitive arrested without a warrant must be taken before a judge or magistrate for an extradition hearing. *Olim*, 461 U.S. at 249. The Court finds that O.C.G.A. § 17-13-34 creates a liberty interest protected by the Due Process Clause of the Fourteenth Amendment by virtue of the mandatory language requiring an extradition hearing "with all practicable speed" when a fugitive is arrested without a warrant and by virtue of the nature of the interest protected by the statute –an individual's freedom from restraint.

Section 17-13-35 reads, ". . . the judge or magistrate *must*, by a warrant reciting the accusation, commit [the fugitive] to the county jail for such a time, not exceeding thirty days and which time *must* be specified in the warrant . . ." (emphasis added). Section 17-13-35 contains mandatory language that places "substantive limitations on official discretion" as to how and for how long an accused may be committed pending issuance of the Governor's extradition warrant. *Olim*, 461 U.S. at 249. A fugitive's continued detention while officials pursue a governor's extradition warrant must be based upon a warrant issued by a Georgia judge or magistrate following an extradition hearing. (Doc. 28-3 at 11-12.) And the period of detention may not exceed thirty days unless extended by a Georgia judge or magistrate under § 17-13-37. The Court finds that O.C.G.A. § 17-13-35 creates a liberty interest protected by the Due Process Clause of the Fourteenth Amendment by virtue of the mandatory language

12

requiring a warrant issued by a judicial officer and limiting the detention period to thirty days and by virtue of the nature of the interest protected by the statute –an individual's freedom from restraint.

### B. Whether Baum's Liberty Interests Were Denied without Due Process

The Court must now determine the minimum due process required by the Fourteenth Amendment in order to determine whether Baum has pleaded and proven a due process violation. When a state creates an interest that "has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty,'" then the state is required to follow "minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." *Wolff,* 418 U.S. at 557. However, "only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise." *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994); *Hudson v. Palmer*, 468 U.S. 517, 530-33 (1984).

> [T]he *McKinney* rule looks to the existence of an opportunity –to whether the state courts, if asked, generally would provide an adequate remedy for the procedural deprivation the federal court plaintiff claims to have suffered. If state courts would, then there is no federal due process violation regardless of whether the plaintiff has taken advantage of the state remedy or attempted to do so.

*Horton v. Bd. of Cnty. Comm'rs of Flagler Cnty.*, 202 F.3d 1297, 1300 (11th Cir.2000). Thus, if Georgia law provides an adequate means to remedy the alleged procedural deprivation, Baum's § 1983 procedural due process claim fails.

Here, Georgia law provided Baum a remedy to the alleged procedural deprivations – the opportunity to file a habeas petition. O.C.G.A. § 17-13-30 ("If the prisoner or his counsel shall state that he or they desire to test the legality of his arrest, the judge of the court of record shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus."); § 17-13-31 ("The district attorney shall answer and defend any habeas corpus action brought under this article, which action contests the issuance, execution, or validity of a Governor's warrant of arrest . . . ."); § 9-14-1 ("Any person restrained of his

liberty under any pretext whatsoever, except under sentence of a state court of record, may seek a writ of habeas corpus to inquire into the legality of the restraint."). In fact, Baum took advantage of this opportunity twice –first, on December 17, 2014, the thirtieth day after her extradition hearing, and next, on January 8, 2015, after the issuance of the Governor's extradition warrant. The Court finds that because Georgia law provided Baum a remedy to the alleged procedural deprivations, her due process rights were not violated. Because this is so, the Court does not herein make any findings as to whether Georgia's extradition statutes were in fact violated because even if they were, Baum was not denied due process in violation of the Fourteenth Amendment.[1] The Court therefore **GRANTS** Sproul's Motion for Summary Judgment (Doc. 24) and **DENIES** Baum's Motion for Partial Summary Judgment (Doc. 28) as to the due process claim against Sproul in his individual capacity.

## IV.   BAUM'S CLAIMS AGAINST SPROUL FOR DECLARATORY AND INJUNCTIVE RELIEF

To the extent Baum seeks injunctive and declaratory relief against Defendant Sproul (*see* Doc. 14 at 6-7), those claims are now moot since Baum obtained counsel in her Dougherty County criminal case (Doc. 27-1 at 2); her Dougherty County charges were *nol prossed* on January 9, 2015; she was released from Sproul's custody on the same day; and she was extradited to Kansas on February 12, 2015. (Docs. 24-1 at 3; 27-2.) *Zatler v. Wainwright*, 802 F.2d 397, 399 (11th Cir. 1986). For those reasons, the Court **GRANTS** Sproul's Motion for Summary Judgment (Doc. 24) and **DENIES** Baum's Motion for Partial Summary Judgment (Doc. 28) as to Baum's claims for declaratory and injunctive relief against Sproul.

---

[1] The Court specifically notes ambiguity regarding whether Baum would have been protected by § 17-13-34, and therefore declines to make such a finding because even if she was, she was not denied due process in violation of the Fourteenth Amendment. *Compare Joiner v. State,* 682 S.E.2d 381, 383 (Ga. App. Ct. 2009) (holding that O.C.G.A. § 17-13-34 "only requires that the accused be brought before a judge or magistrate if he is arrested and detained without a warrant for a crime committed in another state" and held that where an out-of-state warrant has been issued, no extradition hearing is required under O.C.G.A. § 17-13-34), *with Martinez v. Sun,*, 896 F.Supp.2d 710, 721-22 (considering Indiana's nearly-identical version of O.C.G.A. § 17-13-34 and finding that where there is an outstanding out-of-state warrant against an accused but no warrant issued in the arresting state, the accused is entitled to an appearance before a judge "with all practicable speed"); *Lovejoy v. State*, 531 A.2d 921 (Vt. 1987) (holding that where an individual was arrested based on an out-of-state warrant, the Vermont equivalent of O.C.G.A. § 17-13-34 applies to require a hearing "as soon as may be").

## V.   BAUM'S CLAIMS AGAINST REVELL FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR DAMAGES IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES

Defendant Revell also seeks summary judgment as to Baum's claims against him in his individual capacity. First, to the extent Baum seeks injunctive and declaratory relief against Defendant Revell (*see* Doc. 14 at 7), those claims are now moot since Baum obtained counsel in her Dougherty County criminal case (Doc. 27-1 at 2); her Dougherty County charges were *nol prossed* on January 9, 2015; she was released from Sproul's custody on the same day; and she was extradited to Kansas on February 12, 2015. (Docs. 24-1 at 3; 27-2.) *Adler v. Dvual Cnty. Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997). For those reasons, the Court **GRANTS** Revell's Motion for Summary Judgment (Doc. 19) as to Baum's claims for declaratory and injunctive relief against Revell.

Next, although the Court does not find a claim for damages alleged specifically against Defendant Revell, to the extent Baum *does* seek a damages award against Revell under § 1983 (*see* Doc. 14 at 6-7, 11), the Court finds that Revell is entitled to judicial immunity. Judicial immunity protects judges from damages claims arising from actions taken while acting in their judicial capacity unless they acted in the clear absence of all jurisdiction. *Bolin v. Story*, 225 F.3d 1234, 1239-40 (11th Cir. 2000). The Court finds, based on the facts established in the record, that Revell was acting within his judicial capacity in presiding over the September 25, 2014 hearing at which he informed Baum that her charges had been upgraded from a misdemeanor to a felony. The Court also finds that even if Revell had the authority to ensure that committal hearings and appointment of counsel for indigent defendants occurred promptly throughout the Dougherty County court system and failed to do so, any failure to do so was also within his judicial capacity. The Court further finds no fact in the record sufficient to show that, with respect to Baum's court proceedings, Revell acted in complete absence of all jurisdiction.  For those reasons, the Court finds that Revell is entitled to judicial immunity with regard to Baum's § 1983 claim for damages against him in his individual capacity and **GRANTS** Revell's Motion for Summary Judgment (Doc. 24) as to Baum's federal claims against him in his individual capacity.

Finally, as to Baum's federal claims against Revell in his official capacity, the Court adopts the above-stated standards for evaluating claims of Fourth Amendment and due process violations and finds that Revell's very limited involvement in this case, which is undisputed, did not give rise to a Fourth Amendment or due process violation. The Court finds that Revell's presiding over a single hearing to inform Baum that her Georgia state charge was upgrade to a felony did not violate the Fourth or Fourteenth Amendments.

The Court notes that Revell in his official capacity may also be entitled to Eleventh Amendment sovereign immunity, though the Eleventh Circuit has only held that Georgia Superior Court judges are entitled to such and has not, as far as this Court can find, considered whether county circuit magistrate judges are "arms of the state." *See Pugh v. Balish*, 564 F. App'x 1010, 1013 (11th Cir. 2014) (holding that a plaintiff's claims against a Georgia Superior Court judge in his official capacity were barred by the Eleventh Amendment). However, because Revell's Motion for Summary Judgment is uncontested and the facts about his involvement are so few and narrow, the Court finds that, whether or not Revell is immune in his official capacity, he is entitled to judgment as a matter of law based on the undisputed facts. The Court therefore **GRANTS** Defendant Revell's Motion for Summary Judgment (Doc. 19) as to Baum's federal claims against Revell in his official capacity.

## VI.   BAUM'S STATE LAW CLAIMS AGAINST SPROUL AND REVELL

Because the Court herein grants summary judgment as to all of Baum's federal claims against Sproul and Revell, the Court will decline to exercise supplemental jurisdiction over the remaining state law claim in Count Seven. 28 U.S.C. § 1367. The Court has not found any reason to continue to exercise jurisdiction over those claims and finds that prejudice will not result. *See* § 1367(d) (state law claims tolled for thirty days following dismissal); *see, e.g.*, *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1227 (11th Cir. 2002) ("The Court may decline to exercise jurisdiction over state-law claims where the Court has dismissed all the federal claims over which it has original jurisdiction."). Accordingly, Baum's state law claims against Sproul and Revell are **DISMISSED WITHOUT PREJUDICE**.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant Sproul's Motion for Summary Judgment (Doc. 24) as to all federal claims against him and **DENIES** Plaintiff Baum's Motion for Partial Summary Judgment (Doc. 28). The Court also **GRANTS** Defendant Revell's Motion for Summary Judgment (Doc. 19) as to all federal claims against him. The Court declines to exercise supplemental jurisdiction over the remaining state law claims against Sproul and Revell. The Court **DIRECTS** the Clerk of Court to enter judgment in favor of Revell and Sproul as to Baum's federal claims against them. The remaining state law claims are **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED**, this 1st day of February, 2016.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**